UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

MTS Logistics, Inc.,
             :
    Plaintiff,
             :
 - against -
             :  **COMPLAINT**

INNOVATIVE COMMODITIES GROUP,
 LLC,
             :
    Defendant.

------------------------------------------------------x

Plaintiff, MTS Logistics, Inc. ("MTS"), by its attorney Gareth W. Stewart, Esq., complaining of defendant Innovative Commodities Group, LLC ("INNOVATIVE"), respectfully alleges as follows:

**Jurisdiction & Venue**

1. The action arises from breach of marine bills of lading for overseas shipment of goods from the United States to destination in Thailand, and is thus within the Court's maritime jurisdiction.  28 U.S.C. § 1333.

2. Venue is proper in this Court and district, inasmuch as the subject marine bills of lading so stipulate.

3. Plaintiff MTS is a New York State corporation with principal offices at 5 West 37th Street, New York City 10018.  Regulated by the Federal

Maritime Commission as a non-vessel operating common carrier ("NVOCC"),[1] MTS transacts business in the transportation industry providing cargo haulage and related import and export services (collectively, "Services").

      4.    Upon information and belief, defendant INNOVATIVE is a Texas concern with a principal place of business at 11906 Brittmoore Park Drive, Houston, Texas 77041.  INNOVATIVE advertises itself as the "leader in recycling and waste management."

      5.    MTS commenced providing Services to INNOVATIVE during 2017, and accounted for approximately eight overseas shipments of cargo from the USA on INNOVATIVE's behalf prior to the Services bottoming this lawsuit.

      6.    During May-June 2018, INNOVATIVE as shipper enlisted MTS's Services upon seven sealed containers said to contain Plastic Scrap (the "Cargo") to be shipped from Houston and Jacksonville loading ports in the USA to discharge port Laem Chabang and port Pat Bangkok in THAILAND.

      7.    MTS received INNOVATIVE's Cargo for transportation to Thailand under and pursuant to a MBL ("Master Bill of Lading"), which was

---

[1] Generally, a "non-vessel operating common carrier, or NVOCC, contracts with its customers as principal, agreeing to transport their goods on a voyage that includes an ocean leg.  An NVOCC commonly issues bills of lading to its customers in its own name, even though it does not operate the ship that will carry the goods on the ocean voyage. It buys space on the carrying ship like any other customer, receiving a bill of lading from the owner or charterer of that ship when the goods are loaded on board. It commonly consolidates goods from several different shippers into a single container, receiving a bill of lading from the ocean carrier in relation to the container as a whole."

effectively MTS's House Bill of Lading filed with Federal Maritime Commission.[2]

8. MTS's House Bill of Lading is posted on the Internet (www.mts-logistics.com/terms-and-conditions) and incorporated herein.

9. In accordance with protocol spotlighted in fn.1 above, MTS thereupon issued to INNOVATIVE written Booking Confirmations identifying Mediterranean Shipping Company (USA) Inc. ("MSC") as ocean carrier for the deep sea leg of the Cargo's journey from USA to Thailand.

10. MTS's Booking Confirmation identified the MSC ocean going vessel that would be transporting the Cargo from the USA to Thailand.

11. MTS provisioned the Services for INNOVATIVE's Cargo under MSC Booking Confirmation No. 038VH1158192 (port Pat Bangkok) together with No. 038VH1158185 (port Pat Bangkok) and No. 038VH1158181 (port Laem Chabang), as each corresponds with MSC Sea Waybill[3] No. MEDUBT225142 together with No. MEDUBT114301 and No. MEDUBT223972 that MSC had in turn issued to MTS.

12. MTS's House B/L Section 1(f) defines "Merchant" to include INNOVATIVE as Cargo shipper.

---

[2] NVOCC customarily would describe the Bill of Lading it issues for cargo as a "House" Bill of Lading, in contradistinction to the "Ocean" Bill of Lading issued to the NVOCC by the deep sea common carrier for that same cargo.

[3] A "sea waybill is like a bill of lading, except that bills of lading are negotiable, while waybills are not" (Royal & Sun Alliance Insurance, PLC v. Ocean World Lines, Inc., 612 F.3d 138, 141 & fn.5 (2d Cir. 2010)).

13. MTS's House B/L Section 3(a) provides:

"The Merchant acknowledges that the Carrier is a non-vessel operating common carrier ('NVOCC') that neither owns nor charters oceangoing vessels, in consequence of which the Carrier will contract with an actual ocean carrier to perform the high seas leg of the Carriage under this Bill of Lading and does so as agent of the Merchant."

14. MTS's House B/L Section 3(b) provides:

"The Merchant acknowledges that, by the Carrier identifying the Vessel on the front side of this Bill of Lading, the Merchant knows and can determine (i) the name of the actual ocean carrier of the Goods, (ii) the terms and conditions of that ocean carrier's bill of lading and applicable tariff(s), and agrees to be bound thereby."

15. MTS's House B/L Section 3(d) makes the Merchant "liable to the Carrier for all undertakings and responsibilities of the Merchant under this Bill of Lading, including the payment of all Charges due without deduction or set-off."

16. MTS's House B/L Section 5(e) provides:

"Inasmuch as the Carrier acts as agent of the Merchant when contracting with the actual ocean carrier for Carriage of the Goods, the Merchant is a third-party beneficiary of the ocean-carrier's bill of lading and is thus bound by all exemptions, limitations of and exonerations from liability therein contained."

17. MTS's House B/L Section 14(b) provides:

"The Carrier shall comply with notices, orders or directives as to the Goods from any competent government agency or port authority. If by reason of or in compliance with such notice, order or directive anything required or contemplated under this Bill of Lading is not done, or not timely done, the same shall be deemed included within the Carriage and not an unreasonable deviation."

18. MTS's House B/L Section 14(d) provides:

"The Carrier shall be entitled to and the Merchant shall become liable to pay the Carrier all Charges on the Goods and any additional costs or expenses arising from any event enumerated in this Clause 14."

19. MTS's House B/L Section 16(b) provides: "Merchant shall remain responsible to the Carrier for payment of the Charges regardless whether this Bill of Lading is marked, in words or substance, as 'Prepaid,' 'To be Prepaid' or 'Collect.'"

20. MTS's House B/L Section 21 stipulates resolution of disputes in New York venue and further entitles the prevailing party in any such dispute to reimbursement of its reasonable costs and counsel fees from the unsuccessful party.

**Statement of Claim**

21. Upon information and belief, around or about June 25, 2018, whilst MSC's ocean going vessel was on route to Thailand with the Cargo, the Thailand port authority issued a written notice of "suspension of discharging plastics … until further notice" (hereinafter "Suspension Notice").

22. MTS promptly communicated the Suspension Notice to INNOVATIVE, coupled with requested instruction for an alternative consignee to whom the Cargo should be delivered or an alternative destination to which MSC should disembark or offload the Cargo.

23. INNOVATIVE provided no alternative consignee or alternative delivery destination but instead pressed that MSC deliver the Cargo to the port

listed in the Bill of Lading – an impossibility given the Suspension Notice.

24. Upon information and belief, MSC eventually offloaded the Cargo in Singapore and INNOVATIVE was notified of the Cargo's said arrival.

25. Despite notice of the Cargo's aforesaid arrival in Singapore, INNOVATIVE failed and refused to accept such delivery and retrieve the Cargo.

26. Because of INNOVATIVE's failure to provide an alternative consignee or alternative delivery destination for the Cargo, ocean carrier MSC incurred local import charges and storage expenses (collectively, "Expenses").

27. Because of INNOVATIVE's failure to accept delivery of and retrieve the Cargo upon its arrival in Singapore, ocean carrier MSC assessed detention and demurrage charges and incurred expenses and costs associated with the eventual destruction of the Cargo (the latter, also "Expenses").

28. Pursuant to MSC's Sea Waybill, MTS is contractually liable to MSC for Expenses plus detention and demurrage charges.

29. Pursuant to MTS's House B/L, INNOVATIVE is contractually liable to reimburse MTS any and all MSC Expenses, including detention and demurrage charges.

**COUNT I (MTS Unpaid Freight)**

30. Plaintiff MTS repeats, reiterates and realleges ¶¶1-29 as though set forth at length herein

31. MTS provided freight Services to the Cargo, the value whereof being $11,000.00 with payment due from INNOVATIVE per the House B/L but INNOVATIVE has ignored MTS's demands for payment.

### **COUNT II (MSC Expenses and Charges)**

32. Plaintiff MTS repeats, reiterates and realleges ¶¶1-31 as though set forth at length herein.

33. MSC presents a claim against MTS in the amount of $12,032 (allegedly discounted) for detention and demurrage charges and Expenses associated with Cargo carried under BL No. MEDUBT223972, for which INNOVATIVE is contractually liable to reimburse MTS per the House B/L.

34. MSC presents a claim against MTS in the amount of $10,392 (allegedly discounted) for detention and demurrage charges and Expenses associated with Cargo carried under BL No. MEDUBT224301, for which INNOVATIVE is contractually liable to reimburse MTS per the House B/L.

35. MSC presents a claim against MTS in the amount of $4,903 (allegedly discounted) for detention and demurrage charges and Expenses associated with Cargo carried under BL No. MEDUBT225142, for which INNOVATIVE is contractually liable to reimburse MTS per the House B/L.

36. Pursuant to MTS House B/L, INNOVATIVE is liable to reimburse MTS for any and all charges and Expenses that ocean carrier MSC may assess on account of the Cargo and bill to MTS.

## COUNT III (Reimbursement of Legal Fees)

37.   Plaintiff MTS repeats, reiterates and realleges ¶¶1-36 as though set forth at length herein.

38.   Pursuant to MTS's House B/L, upon prevailing in this action MTS will become entitled to reimbursement of its reasonable costs and legal fees from INNOVATIVE.

39.   Plaintiff MTS incurred $6,000 in legal fees to commence this action, and such fees to prosecute this suit will continue to accrue in an amount and to an extent not yet susceptible to precise determination.

WHEREFORE MTS demands judgment against INNOVATIVE, as prayed, with interest, reimbursed legal fees to be determined by the Court, the costs and disbursements of this action together with such other relief as may be reasonable and just.

Dated:  New York, New York
        May 9, 2019

Respectfully submitted,

GARETH W. STEWART, ESQ.
GS 2371
29 Broadway, Floor 21
New York, New York 10006
 (212) 365-8576
garethws@gwstewart.us

Counsel for Plaintiff